# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**NORBERT A. SCHUELLER**,

      Plaintiff,

    vs.                                                                 No. CIV 06-0659 MCA/DJS

**GARY KING, ATTORNEY GENERAL
OF NEW MEXICO; DANIEL MANZANARES,
DIRECTOR OF NEW MEXICO
LIVESTOCK BOARD**,

      Defendants,

**MIKE MAJOR & TIM REED**,
individually & d.b.a. "Major Cattle Co.,"

      Real Parties in Interest.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the following motions: (1) Defendants'

*Motion to Dismiss Complaint for Lack of Jurisdiction and for Failure to State a Claim* [Doc.

3] filed on August 10, 2006; (2) *Plaintiff's Motion for Sanctions for Violations of Rule 11(b),*

*F.R.Civ.P.* [Doc. 8] filed on October 2, 2006; and (3) *Plaintiff's Motion for Summary*

*Judgment Under D.N.M.L.R.-Civ. 56.1 & Rule 56, F.R.Civ.P. (Opposed)* [Doc. 17] filed on

January 26, 2007.  Having considered the parties' submissions, the relevant law, and

otherwise being fully advised in the premises, the Court concludes that Plaintiff's equal-

protection claim must be dismissed with prejudice for failure to state a claim upon which

relief may be granted, and all of Plaintiff's other claims (including his takings and due-

process claims) must be dismissed without prejudice for lack of subject-matter jurisdiction. Accordingly, Defendant's *Motion to Dismiss* [Doc. 4] is granted, and Plaintiff's *Motion for Sanctions* [Doc. 8] and *Motion for Summary Judgment* [Doc. 17] are denied for the reasons set forth below.

## I.   BACKGROUND

On July 25, 2006, Plaintiff filed a civil action against Defendants Patricia Madrid, then Attorney General of the State of New Mexico, and Daniel Manzanares, the Director of the New Mexico Livestock Board.  [Doc. 1.]  Defendant Gary King was substituted for Defendant Madrid after he succeeded her as Attorney General following the November 2006 election.  [Doc. 15, 16.]

Plaintiff's *Complaint* alleges that certain provisions of the New Mexico statutes pertaining to fencing of livestock, N.M. Stat. Ann. ch. 77, art. 16 (Michie 1999), violate the Fifth and Fourteenth Amendments to the United States Constitution because they deny due process and equal protection to owners of unfenced rural property, and because they result in takings without just compensation.  The statutes in question generally serve to preclude owners of unfenced property from recovering damages caused by trespassing livestock unless the trespassing is the result of willful or deliberate action on the part of the livestock owner, or the land in question is within the boundaries of a herd district or an incorporated city, town, or village.  See N.M. Stat. Ann. §§ 77-12-5, 77-16-1, 77-16-3, 77-16-5; Grubb v. Wolfe, 408 P.2d 756, 758-59 (1965), superseded by statute as stated in Dean v. Biesecker, 534 P.2d 481, 482-83 (N.M. 1975).

Plaintiff's *Complaint* alleges that he purchased an unfenced plot of land on a mesa west of Belen, New Mexico in September 2002, and that trespassing livestock owned by the Major Cattle Company have caused damage to Plaintiff's property by trampling or eating Plaintiff's plants and displacing his landscape rocks beginning in June 2006. Plaintiff seeks a declaratory judgment that the New Mexico statutes which allegedly preclude him from recovering damages for the above injuries are unconstitutional, as well as an injunction to prevent Defendants from enforcing these statutes. If such declaratory and injunctive relief is granted, Plaintiff's *Complaint* states that he intends to use that relief in a subsequent effort to obtain an award of damages from the alleged owners of the Major Cattle Company, Mike Major and Tim Reed, who are named as real parties in interest in this litigation.

On August 10, 2006, Defendants moved to dismiss Plaintiff's *Complaint* on the grounds that Plaintiff's takings claim is not yet ripe for adjudication in federal court and that there is no justiciable controversy involving the Defendants as state officials. [Doc. 3, 4.] Plaintiff then filed a *Motion for Sanctions* [Doc. 8, 9] and a *Motion for Summary Judgment* [Doc. 17, 18.] In response to these motions, Defendants supplemented their earlier arguments in favor of dismissing the *Complaint* for lack of jurisdiction and failure to state a claim. [Doc. 19, 20, 21.]

## II.   ANALYSIS

### A.   Standards of Review

Motions to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) "generally take one of two forms:  (1) a facial attack on the sufficiency of the

complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir.2002).  In reviewing a facial attack, the Court construes Plaintiff's pleading liberally, accepts all uncontroverted, well-pleaded factual allegations as true, and views all reasonable inferences in Plaintiff's favor.  See Stuart v. Colo. Interstate Gas Co., 271 F.3d 1221, 1225 (10th Cir. 2001).  "In reviewing a  factual attack, a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts,'" and a court's reference to such materials does not necessarily convert such a factual attack into a Rule 56 motion. Id. (quoting Holt v. United States, 46 F.3d 1000, 1003 (10th Cir.1995)).  Unless it is shown that no re-drafting of the pleadings could cure the jurisdictional defect, a dismissal for lack of subject-matter jurisdiction generally is not a decision on the merits and, therefore, constitutes a dismissal without prejudice.  See Fed. R. Civ. P. 41(b); Leaf v. Supreme Ct. of Wis., 979 F.2d 589, 595 (7th Cir. 1992).

Granting a motion to dismiss a complaint for failure state a claim under Fed. R. Civ. P. 12(b)(6) is appropriate only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir.1997) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  "The court's  function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir.1991).  Accordingly, all well-pleaded factual

allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party. GFF Corp., 130 F.3d at 1384.

"In addition to the complaint, the . . . [C]ourt may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002). The Court "'may also take judicial notice of matters of public record' without converting a 12(b)(6) motion into a motion for summary judgment." Henson v. CSC Credit Servs., 29 F.3d 280, 284 (7th Cir. 1994).

To the extent that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) refers to other material outside of the pleadings, the motion is reviewed as one for summary judgment pursuant to Fed. R. Civ. P. 56. See Fed. R. Civ. P. 12(b). Summary judgment under Fed. R. Civ. P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ." Fed. R. Civ. P. 56(e). Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Id. Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the

burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez

v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

       In order to warrant consideration by the Court, the factual materials accompanying

a motion for summary judgment must be admissible or usable at trial (although they do not

necessarily need to be presented in a form admissible at trial).  See Celotex, 477 U.S. at 324.

It is not the court's role, however, to weigh the evidence, assess the credibility of witnesses,

or make factual findings in ruling on a motion for summary judgment.  Rather, the Court

assumes the evidence of the non-moving party to be true, resolves all doubts against the

moving party, construes all evidence in the light most favorable to the non-moving party, and

draws all reasonable inferences in the non-moving party's favor.  See Hunt v. Cromartie, 526

U.S. 541, 551-52 (1999).

       **B.**     **Plaintiff's Takings and Due-Process Claims**

       While a plaintiff in a civil action generally may file a motion for summary judgment

"at any time after the expiration of 20 days from the commencement of the action," Fed. R.

Civ. P. 56(a), the filing of such a motion does not preclude the Court from first deciding the

issue of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  See Sandy Creek

Investors, Ltd. v. City of Jonestown, 325 F.3d 623, 626 (5th Cir. 2003); J.B. Ranch, Inc. v.

Grand County, 958 F.2d 306, 308 (10th Cir. 1992).  As pointed out in Defendants' response

brief [Doc. 19], the jurisdictional prerequisites for litigating takings and due-process claims

in federal court were recently addressed in Roberson v. City of Albuquerque, No. 04-1284

MCA/DJS (D.N.M. Jan. 9, 2006) (unpublished memorandum opinion and order attached as Ex. 1 to Doc. 19).

The legal principles outlined in Roberson apply here. Plaintiff's due-process claim must be addressed under the same analytical framework as his takings claims. See Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 540-48 (2005); Miller v. Campbell County, 945 F.2d 348, 352-53 (10th Cir. 1991); Rocky Mtn. Materials & Asphalt, Inc. v. Bd. of County Comm'rs of El Paso County, 972 F.2d 309, 311 (10th Cir. 1992); J.B. Ranch, Inc., 958 F.2d at 309. Regardless of whether Plaintiff's claims in this case are construed as alleging a regulatory taking, a physical invasion of his real property, a governmental appropriation of his personal property, or some other deprivation of a constitutionally protected property interest, such a claim is unripe at this juncture because it fails to satisfy both of the jurisdictional prerequisites set forth in Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 186, 194 (1985). See Miller, 945 F.2d at 352.

In this regard, the Supreme Court's takings jurisprudence "uniformly reflect[s] an insistence on knowing the nature and extent of permitted development before adjudicating the constitutionality of the regulations that purport to limit it." McDonald, Sommer & Frates v. Yolo County, 477 U.S. 340, 351 (1986). The Supreme Court has explained this finality requirement as follows:

> a takings claim based on a law or regulation which is alleged to go too far in burdening property depends upon the landowner's first having followed reasonable and necessary steps to allow regulatory agencies to exercise their full discretion in considering development plans for the property, including the opportunity to grant any variances or waivers allowed by law. As a general

> rule, until these ordinary processes have been followed the extent of the restriction on property is not known and a regulatory taking has not yet occurred.

Palazzolo v. Rhode Island, 533 U.S. 606, 620-21(2001).  Before such processes have reached their conclusion, courts cannot determine whether a regulation goes too far in burdening property rights because they do not yet know how far the regulation goes.  See id. at 622; McDonald, Sommer & Frates, 477 U.S. at 348.

These concerns apply here because the livestock-fencing statutes Plaintiff seeks to challenge in this case do not affirmatively require all property owners to allow livestock grazing on their land, nor do they categorically excuse livestock owners from all liability for damages caused by trespassing livestock.  Rather, these statutes set up a regime whereby livestock owners may be held liable for damages caused by trespassing livestock if property owners elect to fence their property according to certain specifications.  See N.M. Stat. Ann. §§ 77-16-3 to 77-16-15; cf. Maguire v. Yanke, 590 P.2d 85, 88-89 (Idaho 1978) (construing similar provisions of Idaho law).  Many states, including New Mexico, also may recognize exceptions under which damages are available if the livestock owners' trespass was willful or deliberate, or if the trespass occurred in an area where property owners had petitioned for the creation of a herd district.  See, e.g., Lazarus v. Phelps, 152 U.S. 81, 85 (1894); Grubb, 534 P.2d at 759; Maguire, 590 P.2d at 88-91.

Plaintiff's *Complaint* makes no allegation that he has exhausted the available state or local procedures for exploring the scope of these exceptions, either through a civil action in state court against the owners of the trespassing livestock, or through administrative action

petitioning the county or other local government for a change in zoning, districting, or municipal boundaries. Without a record of such efforts and the government's responses to them, this Court is not in a position to determine how far the livestock-fencing statutes go in burdening Plaintiff's property rights.

Similar principles apply to Plaintiff's due-process claim. As noted above, the case law interpreting the livestock-fencing statutes does not purport to restrict liability for intentional, deliberate acts of trespass. Insofar as the restrictions on liability only apply when the alleged deprivation of property is caused by the accidental or inadvertent acts or omissions of a non-governmental actor, Defendants are not in a position to provide Plaintiff with any pre-deprivation process because the "very nature of the deprivation ma[kes] predeprivation process impossible." Zinermon v. Burch, 494 U.S. 113, 137 (1990); see Brown v. Muhlenberg Township, 269 F.3d 205, 213 (3d Cir. 2001).

With respect to any post-deprivation remedy, Plaintiff also must show that he has a constitutionally protected property interest in recovering damages for the unintentional trespass of livestock on his unfenced land before he may bring a due-process or takings claim in federal court. Absent a prior state-court adjudication of the scope of Plaintiff's title to the land in question, the existence of such a property interest accompanying that title is subject to question because, as explained in further detail in the analysis of Plaintiff's equal-protection claim, the livestock-fencing statutes of New Mexico and other Western states have been in place in one form or another since the period during which title to the lands of these

states (or their territorial predecessors) first passed from the government into private ownership.

Plaintiff alleges that he purchased the property in question in September 2002 and that the livestock trespassing began in 2006. Both of these events occurred long after the fencing regime entailed by the applicable New Mexico statutes came into being. Thus, it is possible that the benefits and burdens of the fencing regime set forth in these statutes were already woven into the fabric of property rights associated with Plaintiff's land before he ever took ownership of those rights.

Under the Supreme Court's takings jurisprudence, such preliminary questions of state or local law concerning the scope of Plaintiff's property rights and the extent to which they are burdened by New Mexico's livestock-fencing statutes must first be addressed in a state or local forum before this Court has jurisdiction to consider whether Plaintiff has a viable takings or due-process claim under federal law. It follows that Plaintiff's takings and due-process claims are not ripe for adjudication in this Court, and they must be dismissed without prejudice for lack of subject-matter jurisdiction. Plaintiff's motion for summary judgment on these claims is denied.

## C.   Plaintiff's Equal-Protection Claim

In addition to his takings and due-process claims, Plaintiff's *Complaint* asserts that New Mexico's livestock-fencing statutes violate the Equal Protection Clause of the Fourteenth Amendment because these statutes do not apply to property owners within the territory of an incorporated municipality, and because they allegedly discriminate against

property owners who lack sufficient income to fence their properties.  Neither of these alleged classifications jeopardizes the exercise of a fundamental right or targets a suspect class.  Therefore, the Equal Protection Clause only requires the classifications resulting from these livestock-fencing statutes to be rationally related to a legitimate governmental interest. See Goetz v. Glickman, 149 F.3d 1131, 1140 (10th Cir. 1998).

The rationale for the livestock-fencing statutes at issue here has long been recognized in the case law of New Mexico courts and the courts of other Western states.  "At common law it was the duty of the owner of livestock to fence them in, and no duty was placed upon the adjoining landowner to fence them out." Maguire, 590 P.2d at 88.  But from the period when Western grazing lands first passed into private ownership, "Western cattle states generally rejected the common law, holding that livestock roaming at large committed no trespass when they strayed on unenclosed private land." Id. (citing statutes from Arizona, Montana, Nevada, New Mexico, North Dakota, and Wyoming).

This rejection of certain aspects of the common law of trespass came "in response to a common problem during the early settlement of this region in the late 1800's and early 1900's," namely the need for a mechanism to resolve land-use conflicts between historic open-grazing practices and the arrival of new agricultural settlements. Id. at 91.

> As there are, or were . . . vast areas of land, over which, so long as the government owned them, cattle had been permitted to roam at will for pasturage, it was not thought proper, as the land was gradually taken up by individual proprietors, to change the custom of the country in that particular, and oblige cattle owners to incur the heavy expense of fencing their land, or be held as trespassers by reason of their cattle accidentally straying upon the land of others.

Lazarus, 152 U.S. at 85.  This custom was present in New Mexico, because

> New Mexico, as part of the western United States, has always been principally a rural area where most of the land is devoted to the raising of livestock.  It is not surprising therefore that at an early date, [the New Mexico Supreme Court] . . . announced that in this state, as in most of the other western states, the rule requiring the owner of domestic animals to confine them on his own grounds or be liable for their trespass on the unenclosed lands of his neighbors, was not recognized.  Rather, it was held that the owner of livestock could permit his animals, when not dangerous, to run at large without responsibility for their getting on the property of his neighbor.

Grubb, 408 P.2d at 758 (citations omitted).

In rejecting the common-law rule, however, New Mexico and other Western states did not affirmatively require all property owners to allow livestock grazing on their land, nor did they categorically excuse livestock owners from all liability for damages caused by trespassing livestock.  Rather, as noted above, these states set up a regime whereby livestock owners could be held liable for damages caused by trespassing livestock if property owners elected to fence their property according to certain specifications.  See Maguire, 590 P.2d at 88-89.  Many states, including New Mexico, also recognized exceptions under which damages were available if the livestock owners' trespass was willful or deliberate, or if the trespass occurred in an area where property owners had petitioned for the creation of a herd district or otherwise adjusted the boundaries of the area in which the open-grazing rules applied.  See Lazarus, 152 U.S. at 85; Grubb, 534 P.2d at 759; Maguire, 590 P.2d at 88-91.

Because the abrogation of the common law regarding damages for trespass in Western states came as part and parcel of a broader regime for resolving historic land-use conflicts, I have little difficulty in concluding, as a matter of law, that the livestock-fencing statutes at

issue here are rationally related to a legitimate governmental interest.  See Herzberg v. County of Plumas, 34 Cal. Rptr. 3d 588, 600 (Cal. Ct. App. 2005).  It follows that Plaintiff's equal-protection claim must be dismissed with prejudice under Fed. R. Civ. P. 12(b)(6), and Plaintiff's motion for summary judgment on that claim must be denied.

In reaching this conclusion, the Court expresses no opinion on the merits of Plaintiff's policy arguments as to why he believes New Mexico's livestock-fencing statutes are unfair or outdated.  When, as here, the legislation at issue is reviewed under the rational-basis test, such policy arguments are best addressed to the legislative bodies which enacted the statutes, rather than a federal court.

### D.    **Plaintiff's Remaining Claims**

Plaintiff's *Complaint* alludes to the possibility of seeking an award of damages from "Major Cattle Co." and its alleged owners (Mike Major and Tim Reed) in the event that the Court rules in his favor on the constitutionality of the livestock-fencing statutes and grants injunctive relief with respect to Defendants King and Manzanares.  To the extent that these allusions in Plaintiff's *Complaint* are to be treated as additional claims in this litigation that are distinct from the constitutional claims discussed above, such additional claims are subject to dismissal without prejudice at this juncture because this Court lacks subject-matter jurisdiction over them.  The only federal questions presented in Plaintiff's *Complaint* are whether New Mexico's livestock-fencing statutes violate the Fifth or Fourteenth Amendments to the United States Constitution.  Once the claims involving these federal

-13-

questions are dismissed, there is no allegation in Plaintiff's *Complaint* that would support

this Court's exercise of jurisdiction over any other claims asserted therein.

**E.      Plaintiff's Motion for Sanctions**

The Court next turns to Plaintiff's *Motion for Sanctions*.  Fed. R. Civ. P. 11(c) allows

a court to impose sanctions upon its determination that a party has violated Fed. R. Civ. P.

11(b), which provides that:

>  By presenting to the court (whether by signing, filing, submitting, or later
> advocating) a pleading, written motion, or other paper, an attorney or
> unrepresented party is certifying that to the best of the person's knowledge,
> information, and belief, formed after an inquiry reasonable under the
> circumstances,--
>
> (1) it is not being presented for any improper purpose, such as to harass or to
> cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by
> existing law or by a nonfrivolous argument for the extension, modification, or
> reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or,
> if specifically so identified, are likely to have evidentiary support after a
> reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if
> specifically so identified, are reasonably based on a lack of information or
> belief.

In this case, Plaintiff asserts that the representations of Defendants' counsel do not meet this

standard, because counsel for Defendants disagrees with or disputes many of Plaintiff's legal

contentions.

In light of the Court's disposition of Defendant's *Motion to Dismiss*, the Court already has determined that Defendants' legal contentions concerning the ripeness of Plaintiff's takings and due-process claims, as well as the viability of Plaintiff's equal-protection claim, are warranted by the existing law and do not rely on frivolous arguments. Accordingly, Fed. R. Civ. P. 11 does not provide grounds for imposing sanctions on Defendants or their counsel, and Plaintiff's *Motion for Sanctions* must be denied.

## III.   CONCLUSION

For the foregoing reasons, Defendant's *Motion to Dismiss* is granted, and Plaintiff's *Motion for Summary Judgment* and *Motion for Sanctions* are denied. As there are no remaining claims or parties over which this Court has jurisdiction, this action will be dismissed at this time.

**IT IS, THEREFORE, ORDERED** that Defendants' *Motion to Dismiss Complaint for Lack of Jurisdiction and for Failure to State a Claim* [Doc. 3] is **GRANTED**.

**IT IS FURTHER ORDERED** that *Plaintiff's Motion for Sanctions for Violations of Rules 11(b), F.R.Civ.P.* [Doc. 8] is **DENIED**.

**IT IS FURTHER ORDERED** that *Plaintiff's Motion for Summary Judgment Under D.N.M.L.R.-Civ. 56.1 & Rule 56, F.R.Civ.P. (Opposed)* [Doc. 17] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's equal-protection claim is **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that all other claims asserted in Plaintiff's *Complaint* (including Plaintiff's takings and due-process claims) are **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.

**SO ORDERED** this 28th day of February, 2007, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
**UNITED STATES DISTRICT JUDGE**